■ JANET O'CONNELL, Respondent, v EASTERN SAVINGS BANK, Appellant. —Judgment, Supreme Court, Bronx County, entered March 28, 1979 in favor of the plaintiff, after a jury trial, affirmed, with costs. In this action brought to recover the proceeds of a savings bank life insurance policy issued by the defendant bank upon the life of Michael O'Connell, plaintiff's deceased husband, we are all agreed that the evidence was sufficient for the jury to have found that defendant bank had waived the defense of material misrepresentation and thus to support the jury's verdict for the plaintiff. However, the dissenters conclude that, as a matter of law, the bank could not waive the misrepresentation because only the Savings Bank Life Insurance Fund could approve issuance of the policy. Thus, they assert, knowledge of an officer of the bank as to decedent's condition could not be a waiver. We believe that this is too narrow a reading of the provisions of the Banking Law authorizing life insurance departments of savings banks to "conduct the business of life insurance." Section 263 of the Banking Law outlines the powers of a bank's life insurance department: "Upon the issuance of the certificate declaring the life insurance department of a savings and insurance bank established, such department may conduct the business of life insurance and grant or sell annuities with all the rights, powers, and privileges and subject to all the duties, liabilities and restrictions relating to domestic legal reserve life insurance companies conferred or imposed by the insurance law, so far as the same are applicable and except as is otherwise provided herein. Such life insurance department shall, however, be exempt from the provisions of section forty of the insurance law. Such life insurance department shall in all respects, except as is otherwise provided herein, be managed as savings banks are managed under general laws relating to savings banks. Such life insurance department may decline particular classes of risks or reject any particular application." The authority to "conduct the business of life insurance and grant or sell annuities" and to "decline particular classes of risks or reject any particular application" would seem to imply authority to waive defenses. The dissenters rely on section 271 of the Banking Law, which provides: "no policy or contract shall be delivered or issued for delivery except with the approval of the fund." However, nowhere in the statute is there any provision requiring or authorizing or even recognizing that the application for the policy or the policy itself have some indication of the need for such approval. Nor is any such provision contained in the policy here in suit. The face of the policy states only that it was issued by Eastern Savings Bank. The only place authorized for signature to authenticate the policy is a space bearing the name of the bank with a line for signature by its assistant vice-

president, whose signature is affixed there and also to the riders of the policy. Nowhere in the policy is it stated that it is issued subject to the approval of the fund. Similarly the application for the policy makes crystal clear that it is an application to the Eastern Savings Bank. There is no provision requiring approval by the fund. It is undisputed that Harold O. Hartman (Hartman), the assistant vice-president of Eastern Savings Bank, who signed the policy, was the person who sold the policy to the plaintiff's decedent. It is undisputed that Hartman was authorized to act as the general agent for the bank for the purpose of the sale of the policy. Even if it be assumed that the provisions of section 271 of the Banking Law requiring approval of the fund are to be read into the policy or are applicable thereto, it is patent that the fund must act through agents. Under the circumstances of this case the agent was the Eastern Savings Bank acting through Hartman. The jury's verdict sustains the conclusion that Hartman knew of the decedent's condition at the time the application was accepted and the policy issued, and that such knowledge constituted waiver of the condition. The knowledge of the officer or agent authorized to sell and approve the insurance is the knowledge of the defendant insurance company (*Garbin v Mutual Life Ins. Co. of N. Y.*, 77 Misc 2d 689). Accordingly, the trial court properly instructed the jury to return a verdict for the defendant bank unless the jury found that the defendant bank had waived the defense because its assistant vice-president, who filled out the application and issued the policy on decedent's life, had knowledge of decedent's high blood pressure. The jury verdict for the plaintiff establishes that the jury found such a waiver. The evidence was sufficient and the judgment should be affirmed. Concur—Kupferman, J. P., Fein and Sandler, JJ.

Markewich and Silverman, JJ., dissent in the following memorandum by Silverman, J.: I would reverse the judgment appealed from and dismiss the complaint. This is an action on a savings bank life insurance policy issued pursuant to article 6-A of the Banking Law. The decedent died within 10 months after issuance of the policy, of causes including "hypertensive and arteriosclerotic cardiovascular disease." On the application for the policy, the decedent had answered in the negative the question whether he had ever had or had any reason to expect having, or whether he had ever been treated by a physician for, among other things, any diseases of the heart, high blood pressure or blood disorder. He also stated that he had not had a physical examination or consulted a physician within the preceding five years except for a premarital Wasserman. In fact, he had suffered for years from hypertension and had consulted at least one physician and was under care for elevated blood pressure. The court found undisputed proof that decedent suffered from hypertension at the time he had applied for the policy and that his response in the application that he did not have high blood pressure was a material misrepresentation. The court instructed the jury to return a verdict for the defendant bank unless the jury found that the defendant bank had waived the defense because its assistant vice-president, who filled out the application and issued the policy on decedent's life, allegedly had knowledge of decedent's high blood pressure. The jury brought in a verdict for the plaintiff, thus finding such a waiver. There is some evidence from which a jury could have found that the bank knew of decedent's hypertension. (Decedent had formerly been an employee of the bank.) The difficulty with plaintiff's case I think is that the bank could not waive the misrepresentation because only the Savings Bank Life Insurance Fund could approve the issuance of the policy. Thus knowledge of an officer of the bank as to decedent's condition cannot be a waiver that validates the

policy. The statute provides for a life insurance department in each participating savings bank (Banking Law, § 263), and also for a State-wide Savings Bank Life Insurance Fund managed by seven trustees appointed by the Superintendent of Banks with the consent of the Governor. (Banking Law, § 270.) The statute seems to me to make a clear distinction between the power of the life insurance department of each bank to reject a particular application on its own authority, and the power to issue a policy which can be issued only with the approval of the Savings Bank Life Insurance Fund. Thus section 263 of the Banking Law provides: "Such life insurance department [of a bank] may decline particular classes of risks or reject any particular application." On the other hand, with respect to issuance of policies, the statute provides: "no policy or contract shall be delivered or issued for delivery except with the approval of the fund." (Banking Law, § 271.)